## STACY P. CONOVER

*v.*

## JOHN H. ELLIS, executor.

Where the final distribution of an estate by an executor is, by the will, deferred for a considerable time after the settlement of his account, he will not, in the allowance of commissions upon that accounting, be paid for that distribution, or be paid commissions at the highest rate permitted by the statute. The court will reserve a portion of that which it may allow for his final compensation, when he shall have completely performed his duty.

On appeal from decree of the Monmouth county orphans-
court allowing account and fixing commissions of the executor
of the will of Ellen L. Conover, deceased.

*Mr. John L. Conover*, for the appellant.

*Mr. Frank P. McDermott*, for the respondent.

THE ORDINARY.

Upon the allowance of the executor's final account, the orphans
court fixed his commissions at five percentum upon the sum of
$63,175.43; that is, at $3,158.97. The appellant, who takes the
entire estate, except some specific legacies, for his life, appeals
from this allowance, as excessive. It is the greatest sum that
the statute will permit the court to give.

Commissions are to be allowed as compensation, upon reference
to the actual pains, trouble and risk of an executor in settling
the estate, rather than with reference to the quantum of the
estate, and they must not exceed a prescribed limit. The allow-
ance must be kept within such limit, and must not be permitted
to reach the limit, unless it is just and reasonable that it should
do so.

I note, in reading the will of Ellen Conover, that there is to
be an ultimate distribution of her estate, after the death of her
husband, the life-tenant. The executor is charged with that dis-
tribution, so that it is part of the work for which he is to be
compensated. When he undertook the executorship, his duty to
make this ultimate distribution was within his contemplation.
Under the law, he could not, under any circumstances, expect or
have more than five percentum of the moneys coming to his
hands for the complete execution of his trust, including work
that followed, as well as work that preceded, the life estate.
Hence, in assuming the office of executor, he impliedly agreed to
complete all the work contemplated by the will for allowances
which will not, in their aggregate, exceed the limit of compensa-
tion fixed by the statute. If the law does not admit of adequate
compensation for the work, he, nevertheless, has agreed to do the

work, and do it all, for the amount which the law *does* allow. The executor, in this case, is not trustee beyond his executorship, so that he may have double commissions, but he is executor now and remains the same officer during the life and after the death of the life-tenant. Under a decree of the court of chancery construing the will, he is charged, as executor, with the continuing duty of receiving statements from the life-tenant every two years. It will not do for the probate court to exhaust itself by paying, in advance, all that it has power to pay, even if the pains, trouble and risk already suffered by the executor should have justly earned that amount. In such case, wisdom dictates that the value of the work to be done in the future shall be estimated, in order that a proportionate share of the whole amount available for commissions may be paid now, and a proportionate share may be held back to remunerate for the future service, or may be withheld if that future service shall not be efficiently and faithfully performed. This view is within the scheme of the statute, that payment shall only be made when the matter paid for is finally settled (*Pomeroy* v. *Mills, 10 Stew. Eq. 578*), and it is conspicuously fitting in the present exigency.

The only evidence before me as to the pains, trouble and risk of the executor thus far, in the execution of his trust, is what I gather from the statements of the will, inventory, accounts and decree of the court of chancery, and by the inferences I may fairly draw therefrom. Apparently, no testimony was taken upon the subject of the executor's commissions.

The executor's principal work appears to have been the preparation of his inventory; caring for the vessel property, three schooners, in which the testatrix had a fractional interest; collecting income from investments, and the principal on two or three notes and a mortgage, and, as well, distributive shares of the testatrix in two estates; the reinvestment of collected moneys; the superintending of a suit for the construction of a will; accounting and partial distribution. Much of this work was done for him by counsel, for which payment, to the amount of $820.43, was allowed in his accounts.

I think, for the work that the executor has himself done, and for the risk he has taken, two and one-half per cent. upon the $63,175.43 will amply pay him. The remaining two and one-half per cent., between the percentage I allow and the maximum permitted by the statute, should be reserved to pay for services to be hereafter rendered.

My conclusion leads to a reversal of the decree of the orphans court. The costs of this appeal, upon both sides, together with a counsel fee of $25 to each side, may be paid out of the estate.