BERGEN COUNTY ORPHANS COURT.

**IN THE MATTER OF THE FINAL ACCOUNT OF THE EXECU-
TOR OF THE ESTATE OF HARRY V. READ, DECEASED.**

Decided September 27, 1946.

Proctor for the accountant, *Bernard A. Green.*

DEL MAR, J. The executor has filed his final account praying for its allowance, also for the allowance of counsel fees and disbursements. The matter coming on for a hearing, the allowance of executor's commissions and counsel fees was waived. No exceptions have been filed and the surrogate's report did not call attention to any items which should be disallowed. One of the beneficiaries is a minor. He was not represented by any guardian and no request was made of the court to appoint any. The court, on its own motion, appointed William A. Schmidt as guardian *ad litem* of the infant.

Whether or not accounts of executors are excepted to, it is the duty of the court to examine them and the vouchers and receipts for payments and disbursements claimed therein and decree an allowance of the account as stated only if found to be correct. *R. S.* 3:10–15; *N. J. S. A.* 3:10–15. *In re Schlemm,* 130 *N. J. Eq.* 295 (at *p.* 307); *22 Atl. Rep. (2d)* 364; *Conover* v. *West Jersey Mortgage Co.,* 96 *N. J. Eq.* 441; *126 Atl. Rep.* 855. This duty becomes especially important when the rights of an infant are concerned.

Such examination by the court discloses payments amounting to two thousand one hundred ninety-one dollars and seventy-five cents ($2,191.75) to Morris Levine, to Nevas & Nevas, and to Wasserman, Behr & Shagan for legal services and disbursements. *Query:* Are these proper charges against the estate?

It does not appear that any of the persons mentioned are members of the bar of this state. It does appear that the services alleged to have been rendered were rendered since the effective date of *R. S.* 2:20–9; *N. J. S. A.* 2:20–9.

The vouchers covering the alleged legal services show no details thereof, not even that the services were such that the advice of attorneys of another state was necessary or desirable.

The proctor who appeared in court for the executor and asked for a decree allowing the account did not call the court's attention to these items in the account and did not make any request for adjudication as to their fairness. The evident design was to circumvent the effect of the aforesaid statute by having the account approved as filed. The question arises as to whether a fiduciary may employ foreign counsel, pay

them out of the funds of the estate and rely upon his vouchers as justification for such payment.

The Court of Errors and Appeals in *In re Babcock*, 112 *N. J. Eq.* 374; 164 *Atl. Rep.* 407, 408, held that: "The executor would be derelict if he made payment of a counsel fee without court allowance and might, if the same was improper, have been surcharged therefor." The same court in *In re Merz*, 132 *N. J. Eq.* 313; 28 *Atl. Rep.* (*2d*) 176, held that: "The prevailing practice is for the representatives of decedent's estate on their accounting to seek an allowance for counsel who have advised them. Fees for services rendered to them should be allowed by the court, since some of the beneficiaries might otherwise object." Also held: "The court is concerned only in fixing an amount that is fair under the circumstances of each particular case. Any other practice would require the attorneys employed by a decedent's estate to sue the representative at law. They would then have to seek the approval of the Orphans Court for payment of the judgment." This case, I think, recognizes the right of a fiduciary to employ an attorney and the right of the attorney to recover the reasonable value of his services by a decree of the Orphans Court.

I have noted the opinion of the learned judge of the Orphans Court in *In re Foster*, 13 *N. J. Mis. R.* 36; 176 *Atl. Rep.* 156, 158, that: "Attorneys employed by a personal representative to assist him in administering his trust or to prosecute or defend actions for or against him in his official capacity have no claim they can enforce *directly* against the estate." (Emphasis mine.) The same doctrine was approved in the Court of Chancery in *Lewis* v. *Morgan*, 132 *N. J. Eq.* 343; 28 *Atl. Rep.* (*2d*) 215. The only New Jersey case cited to support these opinions is *Doolittle* v. *Willet*, 57 *N. J. L.* 398; 31 *Atl. Rep.* 385, which decision is based upon a contract to purchase supplies used in a business conducted by the decedent's son and another. This business was in no way connected with the administration of the estate. One case therein cited, namely, *Laible* v. *Ferry*, 32 *N. J. Eq.* 791, also deals with an executor who was empowered by the will of the testator to carry on his business after his decease

and alludes to a debt contracted in connection with such business by the executor, and held that, even though the executor was personally liable for such a debt, he was entitled in equity to be indemnified out of the property lawfully embarked in the business. The other case cited is *Wild* v. *Davenport*, 48 *N. J. L.* 129; 7 *Atl. Rep.* 295, which case recognizes the doctrine that where an executor has the option of entering a partnership of which the decedent was a member, and does so voluntarily, he becomes personally liable for debts for the reason that he has of his own volition engaged in the business as a principal, and is a contracting party, but held that, under the facts in that case, the executor did not become a partner and, therefore, was not liable.

The rights of an executor to employ agents to help administer an estate is too well settled to admit of any controversy. So is the power of the Orphans Court to allow the reasonable value of services so rendered in proper cases, settled by many decisions. It may well be that a fiduciary who employs the services of an attorney and agrees to pay a specific sum therefor becomes personally bound and can be sued individually on such contract in a court of law, but, where the agreement is to pay for the reasonable value of such services, since the court having jurisdiction over the accounting is empowered to fix the reasonable value thereof, I think it becomes an implied term of the hiring that the compensation is to be fixed by the court.

In *In re Barsotti* v. *Bertolino*, 128 *N. J. Eq.* 363; 16 *Atl. Rep.* (2d) 454, 456, it was held that: "The services of counsel of a foreign jurisdiction are not required in the absence of special circumstances, such as litigation in the foreign forum or questions which are governed by the law of that jurisdiction."

In *In re Turnbull*, 1 *N. J. Mis. R.* 41, Judge Flannagan of the Essex County Orphans Court, said: "It is the established practice before this court to apply to the court to fix the amount of counsel fees at the time the final account is submitted and before they are paid, and not to pay counsel fees in advance and then submit them for allowance in the form of an expenditure already made. A departure from the

established practice, as was done in this case, is not looked upon with favor by the court;" and, therefore, "where payments for attorneys' fees have already been made only such amounts will be allowed as are established as reasonable compensation." (Citing *Hurlbut* v. *Hutton,* 44 *N. J. Eq.* 308; 15 *Atl. Rep.* 417, and *Kingsland* v. *Scudder,* 36 *N. J. Eq.* 287).

From the foregoing cases I think it may be gathered that a fiduciary has no power to bind the estate which he represents to pay specific compensation to attorneys whom he may employ to help him in the administration of the estate, and, if he makes payments to such attorneys, he does so at his peril and that the allowance of such payments should only be made by the court if they are, in the opinion of the court, reasonable and necessary, and that where foreign counsel are employed, special circumstances must be shown for the necessity thereof.

The executor not having shown any necessity for the employment of foreign counsel and having presumed to usurp the functions of the court by paying for legal services allegedly rendered by lawyers not members of the New Jersey bar, and in apparent violation of *R. S.* 2:20–9; *N. J. S. A.* 2:20–9, his account will be surcharged for the sum of such payments, which are hereby disallowed.